**Thomas James BECK, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–822–0332–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

March 24, 1983.

Charles E. Martin, Houston, for appellant.

James C. Brough, Houston, for appellee.

Before JACK SMITH, DUGGAN and LEVY, JJ.

## OPINION

JACK SMITH, Justice.

This is an appeal from a conviction of involuntary manslaughter wherein the jury assessed punishment at five years confinement. The appellant's conviction was based on an indictment which alleged that he caused the death of a third person while operating his car under the influence of alcohol. The appellant asserts three grounds of error alleging that the admission of the blood/alcohol tests was error.

At appellant's request, the statement of facts was limited to the hearing on his pre-trial motion to suppress the results of the blood/alcohol test, and the admission of the results of the test during trial.

The State insists initially that because the appellant has not brought forward a complete statement of facts, this court is precluded from reviewing questions relating to the admissibility or insufficiency of the evidence. The State cites numerous cases, including, *Timmons v. State,* 586 S.W.2d 509 (Tex.Cr.App.1979); and *Hale v. State,* 509 S.W.2d 637 (Tex.Cr.App.1974), to support its position. These cases involve situations where the appellant failed to include a transcription of the proceedings altogether, or the transcription which was included was an insufficient record from which the appellate court could determine the validity of an alleged error.

The cases cited by the State are distinguishable from the instant case. The record before this court contains all of the facts and proceedings relevant to a determination of the admissibility of the blood/alcohol test. The State does not contend otherwise.

■ We hold that it is not mandatory that a complete statement of facts be provided to the appellate court when a partial statement of facts contains a complete record of all facts pertaining to the alleged error.

The appellant's first ground of error alleges that the trial court erred in admitting into evidence the results of the blood/alcohol test. He asserts that the State failed to establish a chain of custody to prove that the blood sample analyzed was taken from the appellant. He fails to cite authority from the Court of Criminal Appeals to support this contention. However, he does cite a Court of Civil Appeals decision holding that the results of a blood/alcohol test were inadmissible because of the failure to establish the chain of custody. *May v. Missouri Kansas-Texas R.R. Co.,* 583 S.W.2d 694 (Tex.Civ.App.— Waco 1979, writ ref'd, n.r.e.). The Texas Supreme Court, in refusing the writ on this case, held that hospital records showing the results of the test were admissible under the Business Records Act, and that any gaps in the chain of custody go to the weight to be given to the testimony, rather than to its admissibility. *Missouri Kansas-Texas R.R. Co. v. May,* 600 S.W.2d 755 (1980).

A similar position has been adopted by the Court of Criminal Appeals. Where the State shows the beginning and the end of the chain of custody, any gaps in between, go to weight rather than to admissibility. *Medellin v. State,* 617 S.W.2d 229 (Tex.Cr. App.1981); *Mendoza v. State,* 552 S.W.2d 444 (Tex.Cr.App.1977); *Garza v. State,* 573 S.W.2d 536 (Tex.Cr.App.1978).

In the instant case, Dr. Daniel Zalucek testified that he was aboard the Life Flight Helicopter on January 1, 1982, which carried the appellant from the scene of the accident to the hospital. Dr. Zalucek stated that he could not remember whether he took the blood sample or whether it was taken by someone else in his presence, but he knew that one was taken because this was standard hospital procedure. He stated that once the blood sample was taken, it was marked with the patient's emergency room number and deposited in a pneumatic chute which ran directly to the laboratory. He further stated that during his experience at Hermann Hospital, a blood sample sent through this chute was never lost, broken, or mixed up.

Bobbie Susan, a laboratory technician at Hermann Hospital, testified that she was on duty in the chemical laboratory at Hermann Hospital on January 1, 1981. She testified that she conducted the test for alcohol content on the sample containing the appellant's emergency room number. She also stated that the test results bore her initials and that the laboratory number next to the emergency room number was in her handwriting.

■ The testimony of these two witnesses shows the beginning and the end of the chain of custody of the blood taken from the appellant, and the fact that the doctor did not remember who actually took the sample goes only to the weight of the evidence and not its admissibility. The appellant's first ground of error is overruled.

The appellant next contends that the evidence of the blood/alcohol test should not have been admitted. He argues that the State failed to prove that the machine used for the test was checked for accuracy and operated by someone who understood its scientific theory. The appellant's contention is based on the holdings of the Court of Criminal Appeals regarding the admissibility of the results of a breathalizer test. *French v. State,* 484 S.W.2d 716 (Tex.Cr. App.1972); *Cody v. State,* 548 S.W.2d 401 (Tex.Cr.App.1977).

■ Applying the criteria used in *French* and *Cody* to the facts of the instant case, the evidence is sufficient to support the conclusion that Ms. Susan understood the theory of the machine. It is also established that she knew how to run the machine, and how to check it for accuracy.

Ms. Susan testified as to how the machine analyzed the alcohol content of the blood. She also testified, in detail, about the procedure utilized in running the test. Further, she testified how the machine was checked for accuracy, and that the machine had been checked for accuracy on the date the appellant's blood test was run. The only aspect of the machine about which she could not testify was its internal engineering.

We hold that there was sufficient evidence to prove that the machine used to test the appellant's blood/alcohol content was checked for accuracy and operated by a person who understood its scientific theory. The appellant's second ground of error is overruled.

It is the appellant's final contention that the State failed to prove that the chemicals of the reagent package used in the test were properly compounded.

We first observe that there was no evidence which would raise a question as to whether the reagent chemicals were properly compounded. Ms. Susan testified about her qualifications as a laboratory technician as well as her experience in conducting blood/alcohol tests. Ms. Susan's qualifications were not attacked by the appellant. Additionally, she testified that the reagent chemicals were stored in a sealed container and were pre-measured and pre-mixed by the company which manufactured the machine. Finally, in response to cross-exami-

nation, Ms. Susan stated that in her experience, there had never been a problem with the reagent chemicals.

There is no evidence in the record that Ms. Susan improperly tested the blood, that the reagent chemicals were not the proper chemicals to perform the test, or that the chemical reagents were not accurate or reliable. The evidence presented by the State was sufficient to lay the predicate for admission of the results of the blood tests, and demonstrated the accuracy and reliability of those results. Based on the evidence presented in this case, we hold that it was not necessary for the State to offer further proof that the chemical reagents were properly compounded. The appellant's third ground of error is overruled.

The judgment of the trial court is affirmed.